IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Tariq Hamadneh, M.D., | ) | CASE NO.: 4:26-cv-0335-JD-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM ORDER AND** |
| Grand Strand Regional Medical | ) | **OPINION GRANTING TEMPORARY** |
| Center, LLC, and HCA Healthcare, | ) | **RESTRAINING ORDER** |
| Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff has filed an Emergency Motion for Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65(b). (DE 4.) The Court has reviewed the Motion, Complaint (DE 1), sworn declarations and exhibits submitted therewith, cited authorities, and the record presently before the Court. For the reasons below, the Motion is GRANTED.

## I.     BACKGROUND

**A.     Factual Background**

Plaintiff is a physician who was enrolled as a categorical resident in Defendants' Accreditation Council for Graduate Medical Education ("ACGME")–accredited General Surgery residency program pursuant to a written Graduate Medical Education Trainee Agreement. (DE 4-1 ¶ 5; DE 4-4.) That Agreement, along with Defendants' Graduate Medical Education Manual, governs remediation, discipline, dismissal, and due-process protections applicable to residents. (DE 4-4.)

1

Plaintiff alleges that Defendants dismissed him from the residency program in violation of contractual due-process guarantees, mandatory institutional procedures set forth in the GME Manual, and federal civil-rights law. (DE 1.) Plaintiff further alleges that Defendants' stated rationale for dismissal—patient-safety concerns—was unsupported by contemporaneous institutional documentation. (DE 4-1 ¶ 35, DE 4-2.)

Following Plaintiff's dismissal, Defendants reported Plaintiff's termination to the Educational Commission for Foreign Medical Graduates ("ECFMG"). As a result, Plaintiff's J-1 exchange-visitor visa sponsorship was terminated, and his period of lawful immigration status was shortened, with expiration scheduled for February 1, 2026. (DE 4-1 ¶ 40.)

Plaintiff contends that, absent immediate injunctive relief, he will lose lawful immigration status, be required to depart the United States, and permanently lose the ability to complete an ACGME-accredited surgical residency and obtain board certification. (DE 4-1 ¶ 41–45.)

**B.     Procedural Posture and Record Considered**

Plaintiff filed this action and Emergency Motion for Temporary Restraining Order under Rule 65(b). In support of his motion, Plaintiff submitted sworn declarations and documentary evidence, including:

- Plaintiff's own declaration, executed under penalty of perjury (DE 4-1);
- The declaration of a supervising attending physician involved in Plaintiff's training (DE 4-2);
- The Graduate Medical Education Trainee Agreement (DE 4-4);

- The applicable Graduate Medical Education Manual (DE 4-5);
- Defendants' written remediation and dismissal materials (DE 4-6, DE 4-7, DE 4-8);
- Correspondence reflecting Defendants' reporting of Plaintiff's dismissal to ECFMG and the resulting termination of Plaintiff's J-1 visa sponsorship (DE 4-9).

The Court further notes that Defendant Grand Strand Regional Medical Center, LLC, has entered an appearance through counsel. (DE 6.) The Court's findings at this stage are made solely for purposes of determining whether temporary emergency relief is warranted and do not constitute final findings of fact or conclusions of law on the merits.

## II.     LEGAL STANDARD

Rule 65(b)(1) of the Federal Rules of Civil Procedure establishes the procedure for federal courts to grant a TRO "without written or oral notice to the adverse party . . . ." This exceptional remedy is appropriate "only if . . . specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Rule 65(b)(1)(A), Fed. R. Civ. P. In addition, counsel for the movant must "certif[y] in writing any efforts made to give notice and the reasons why it should not be required." *Id.* 65(b)(1)(B).

Finally, a movant seeking a TRO must establish all four of the following criteria:

(1)   that he is likely to succeed on the merits,

(2)   that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief,

 (3) that the balance of equities tips in his favor, and

 (4) that the TRO is in the public interest.

*League of Women Voters of N.C. v. N. Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

Where, as here, the requested relief is mandatory in nature, the Court applies the standard with particular care. *Pashby v. Delia*, 709 F.3d 307, 319–20 (4th Cir. 2013).

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

Plaintiff's motion rests on claims alleging (1) breach of contract and failure to adhere to mandatory procedures incorporated into the Graduate Medical Education Trainee Agreement, and (2) race and ancestry discrimination and retaliation in violation of 42 U.S.C. § 1981. (DE 1.) The Court does not determine at this stage the ultimate viability of each asserted claim. Rather, the Court considers whether Plaintiff has shown a likelihood of success on at least one claim to warrant temporary injunctive relief. *See Winter*, 555 U.S. at 20. Based on the present record, Plaintiff has met that burden.

Although courts afford substantial deference to academic and professional training decisions, that deference is limited to judgments reflecting the conscientious exercise of professional judgment and does not extend to decisions that are arbitrary, unsupported by the record, or reached without adherence to required procedural safeguards. *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985). Under South Carolina law, mandatory institutional policies *may* be contractually

enforceable when incorporated by reference into an agreement and not disclaimed, though general policy statements or aspirational guidelines are not enough. *See Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 697–99 (S.C. 2005) (holding that mandatory, progressive discipline procedures may constitute enforceable promises).

Here, Plaintiff has produced evidence suggesting that Defendants failed to adhere to express, mandatory provisions of the Graduate Medical Education Manual governing remediation, appeal, and dismissal—procedures that the Trainee Agreement expressly invokes and requires the parties to follow in connection with adverse training decisions. The record reflects that Defendants labeled Plaintiff's remediation as "ineligible for appeal" (DE 4-6 at 1), notwithstanding the Manual's unambiguous provision that remediation matters are subject to due-process review (DE 4-5). The record further reflects that Defendants declined to provide Plaintiff access to the evaluations and documentation purportedly relied upon in support of dismissal, despite the Manual's due-process framework, which contemplates a fair and informed review of adverse actions based on access to the materials relied upon. At this stage, these alleged departures from mandatory, contractually referenced procedures are sufficient to support Plaintiff's showing of a likelihood of success on his contract-based claims.

Plaintiff has also presented sworn evidence undermining Defendants' stated patient-safety rationale. Specifically, Plaintiff submitted a declaration from a supervising attending physician, who avers that, following Plaintiff's reinstatement,

Plaintiff met expectations for his level of training and that the institution documented no patient-safety events, quality reports, or risk-management escalations involving Plaintiff. (DE 4-2.) A dismissal premised on asserted safety concerns that are unsupported by contemporaneous institutional records plausibly qualifies as arbitrary or pretextual and therefore falls outside the scope of deference traditionally afforded to academic judgment. *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. at 225 (reasoning that judges may not override university decisions unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment).

Plaintiff has also presented evidence supporting a plausible claim under 42 U.S.C. § 1981, which prohibits race and ancestry discrimination in the making and enforcement of contracts. Plaintiff, who is of Palestinian/Arab ancestry, alleges that following complaints regarding unfair treatment in the residency program, Defendants subjected him to increased scrutiny and accelerated disciplinary action, culminating in dismissal. The temporal proximity between Plaintiff's reinstatement and the subsequent escalation of discipline, combined with evidence calling into question Defendants' stated rationale for dismissal, is sufficient at this preliminary stage to support an inference of discriminatory or retaliatory intent. While the Court does not resolve factual disputes or assess credibility at this juncture, Plaintiff has made a sufficient showing to satisfy the likelihood-of-success requirement for purposes of Rule 65.

### B.     Irreparable Harm

Plaintiff has also demonstrated that he is likely to suffer irreparable harm absent immediate injunctive relief. *Winter*, 555 U.S. at 22.

Irreparable harm is harm that cannot be adequately remedied by money damages or corrected through later judicial action. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). The Fourth Circuit has repeatedly recognized that loss of legal status, forced removal from the United States, and the permanent disruption of a professional trajectory constitute classic forms of irreparable injury. *See*, e.g., *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378–79 (4th Cir. 2012) ("The status quo to be preserved by a preliminary injunction, however, is not the circumstances existing at the moment the lawsuit or injunction request was actually filed, but the last uncontested status between the parties which preceded the controversy.") (quoting *Stemple v. Bd. of Ed. of Prince George's Cnty.*, 623 F.2d 893, 898 (4th Cir.1980)).

Here, Defendants' dismissal decision has resulted in termination of Plaintiff's J-1 visa sponsorship, with lawful status set to expire imminently. Once Plaintiff is required to depart the United States, he will be unable to continue his ACGME-accredited surgical residency, and his eligibility to complete training and obtain board certification will be permanently foreclosed. No later award of damages or post-hoc reinstatement could restore Plaintiff to that position.

Moreover, once Plaintiff loses lawful status and departs the country, the Court's ability to provide effective final relief on the merits would be substantially impaired. The threatened harm is not speculative; it is concrete, imminent, and irreversible. Under controlling precedent, this showing satisfies the irreparable-harm requirement for temporary injunctive relief.[1]

**C.     Balance of Equities**

The balance of equities strongly favors Plaintiff. Denial of relief would result in catastrophic and irreversible consequences for Plaintiff's career and family. By contrast, the temporary reinstatement of Plaintiff to supervised residency status pending further proceedings imposes, at most, a limited and temporary burden on Defendants, particularly in light of the absence of documented patient-safety events in the current record.

**D.     Public Interest**

The public interest supports preserving the status quo pending adjudication. The public has an interest in the fair and nondiscriminatory administration of graduate medical education programs, adherence to contractual and procedural

---

[1]     The Court recognizes that the relief ordered is mandatory in nature and that such relief is disfavored and warranted only in limited circumstances. *Pashby v. Delia*, 709 F.3d 307, 319–20 (4th Cir. 2013). This is, however, one of those limited circumstances. The relief granted does not finally resolve the merits of Plaintiff's claims or require Defendants to make a permanent change to their residency program, but instead temporarily restores the parties to the last uncontested status quo pending further proceedings. *See id.* at 321. The record reflects that, absent interim reinstatement, Plaintiff will lose lawful immigration status and be forced to depart the United States before the Court can conduct an adversarial hearing on a preliminary injunction, thereby substantially impairing the Court's ability to provide effective relief should Plaintiff ultimately prevail. Under these narrow and exigent circumstances, and based on Plaintiff's clear showing under the *Winter* factors, limited mandatory relief is necessary to preserve the Court's jurisdiction and ensure that the merits of the dispute can be fairly adjudicated.

safeguards, and ensuring that allegations affecting patient safety are grounded in evidence. Temporary relief serves these interests without resolving the ultimate merits of the dispute.

### IV.   ORDER

Accordingly, it is hereby **ORDERED** that:

1. Plaintiff's Emergency Motion for Temporary Restraining Order (DE 4) is **GRANTED**.

2. Defendants Grand Strand Regional Medical Center, LLC, and HCA Healthcare, Inc., their officers, agents, servants, employees, and all persons acting in concert with them, are **TEMPORARILY RESTRAINED AND ENJOINED** from treating Plaintiff as dismissed or terminated from the residency program.

3. Defendants shall immediately reinstate Plaintiff to the General Surgery residency program, or, at a minimum, to an equivalent resident status pending further order of the Court, sufficient to:

    - preserve Plaintiff's participation in ACGME-accredited graduate medical education; and

    - permit continuation or restoration of Plaintiff's J-1 visa sponsorship and lawful immigration status.

4. Defendants are **ENJOINED** from reporting Plaintiff as dismissed or terminated to ECFMG, ACGME, the American Board of Surgery, or any immigration or credentialing authority pending further order of the Court.

5. This Temporary Restraining Order shall remain in effect for fourteen (14) days from the date of entry, unless extended by the Court or dissolved earlier.

6. The Court will set an expedited hearing on Plaintiff's motion for preliminary injunction.

7. Pursuant to Rule 65(c), the Court finds that no security, or only nominal security, is required under the circumstances.

IT IS SO ORDERED.

Florence, South Carolina
January 31, 2026

*Joseph Dawson, III*
Joseph Dawson, III
United States District Judge