IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Tariq Hamadneh, M.D., | ) | CASE NO.: 4:26-cv-0335-JD-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM ORDER AND** |
| Grand Strand Regional Medical Center, LLC, and HCA Healthcare, Inc. | ) ) ) | **OPINION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Tariq Hamadneh, M.D. ("Plaintiff"), has moved for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. (DE 4.) Plaintiff seeks reinstatement into Defendants Grand Strand Regional Medical Center, LLC, and HCA Healthcare, Inc.'s (collectively "Defendants") general surgery residency program pending resolution of this action. Defendants oppose the motion. (DE 12.) The Court conducted a noticed preliminary injunction hearing (DE 9; DE 13) and reviewed the parties' briefing, testimony, documentary exhibits, and the arguments presented.

For the reasons below, Plaintiff has not carried his burden under the governing standard, and the Motion for Preliminary Injunction is, therefore, **DENIED**.

## I.     BACKGROUND

### A.     Factual Background

Plaintiff is a physician who was enrolled as a categorical resident in Defendants' Accreditation Council for Graduate Medical Education ("ACGME")–accredited General Surgery residency program pursuant to a written Graduate

1

Medical Education Trainee Agreement. (DE 4-1 ¶ 5; DE 4-4.) That Agreement, along with Defendants' Graduate Medical Education Manual, governs remediation, discipline, dismissal, and due-process protections applicable to residents. (DE 4-4.)

Plaintiff alleges that Defendants dismissed him from the residency program in violation of contractual due-process guarantees, mandatory institutional procedures set forth in the GME Manual, and federal civil-rights law. (DE 1.) Plaintiff further alleges that Defendants' stated rationale for dismissal—patient-safety concerns—was unsupported by contemporaneous institutional documentation. (DE 4-1 ¶ 35, DE 4-2.)

Following Plaintiff's dismissal, Defendants reported Plaintiff's termination to the Educational Commission for Foreign Medical Graduates ("ECFMG"). As a result, Plaintiff's J-1 exchange-visitor visa sponsorship was terminated, and his period of lawful immigration status was shortened, with expiration scheduled for February 1, 2026. (DE 4-1 ¶ 40.)

Plaintiff contends that, absent immediate injunctive relief, he will lose lawful immigration status, be required to depart the United States, and permanently lose the ability to complete an ACGME-accredited surgical residency and obtain board certification. (DE 4-1 ¶ 41–45.)

**B.     Procedural Posture and Record Considered**

On January 30, 2026, Plaintiff filed this action, asserting claims arising from his dismissal from Defendants' ACGME-accredited General Surgery residency program. (DE 1.) Plaintiff contemporaneously sought emergency injunctive relief.

(DE 4.) On January 31, 2026, following review of the limited record before it, the Court entered a Temporary Restraining Order preserving the status quo pending a preliminary injunction hearing. (DE 7.)

Before the preliminary injunction hearing, the parties submitted extensive additional materials, including contemporaneous academic evaluations, remediation, and corrective action plans, Clinical Competency Committee materials, appeal determinations, internal residency program communications, and sworn declarations. Because these materials consist largely of confidential academic records, evaluations, and personnel information, they were submitted under seal and have been treated as such by the Court.

The Court conducted a noticed preliminary injunction hearing at which it heard testimony from Dr. Ralph Wesley Vosburg, M.D., Dr. Thomas Genuit, M.D., and Dr. William N. Hannah, Jr., M.D., on behalf of Defendants and from Dr. Antonio P. Pepe, M.D., for Plaintiff. The Court has also considered the sworn declarations submitted in connection with the motion, including the declarations of Dr. Vosburg, Dr. Hannah, and Dr. Pepe, as well as the documentary exhibits referenced therein. The Court further considered the parties' written submissions, arguments of counsel, and the record as a whole.

The Court's consideration of this record reflects the expanded evidentiary showing developed after entry of the Temporary Restraining Order and is not limited to the materials before the Court at the TRO stage.

## II. LEGAL STANDARD

Rule 65(a)(1) of the Federal Rules of Civil Procedure establishes that federal courts may "issue a preliminary injunction only on notice to the adverse party." Rule 65(a)(1), Fed. R. Civ. P. A movant seeking a preliminary injunction must establish all four of the following criteria:

    (1)    that he is likely to succeed on the merits,

    (2)    that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief,

    (3)    that the balance of equities tips in his favor, and

    (4)    that the preliminary injunction is in the public interest.

*League of Women Voters of N.C. v. N. Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

The failure to satisfy any one of these factors is sufficient to deny relief. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346–47 (4th Cir. 2009).

Where, as here, the requested relief would require judicial interference with academic decision-making in a professional training program, courts must also apply the substantial deference mandated by *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214 (1985), and its progeny.

## III. DISCUSSION

### A. Likelihood of Success on the Merits

Plaintiff's motion rests on claims alleging (1) breach of contract and failure to adhere to mandatory procedures incorporated into the Graduate Medical Education Trainee Agreement, and (2) race and ancestry discrimination and retaliation in

violation of 42 U.S.C. § 1981. (DE 1.) At this stage, the Court does not resolve disputed facts or determine the ultimate viability of Plaintiff's claims. The question is whether Plaintiff has shown a likelihood of success on at least one claim sufficient to justify extraordinary preliminary relief. *See Winter*, 555 U.S. at 20. Based on the expanded post-TRO record, Plaintiff has not made that showing.

    **1.**    **Contractual and Procedural Claims**

Plaintiff contends that Defendants materially breached the Trainee Agreement by failing to adhere strictly to procedures set forth in the Graduate Medical Education Manual. Even assuming, without deciding, that the Manual is contractually incorporated and enforceable to the extent Plaintiff claims, judicial review of academic dismissal decisions remains narrow and deferential. *See Ewing*, 474 U.S. at 225.

Under *Ewing*, a court may not override an academic decision unless it constitutes "such a substantial departure from accepted academic norms as to demonstrate that the [person or committee responsible] did not exercise professional judgment." *Id*. This demanding standard is not met by disagreement with faculty evaluations, disputes over the adequacy of remediation, or allegations of procedural noncompliance. Nor does the existence of internal policies convert academic judgments into matters for routine judicial enforcement where professional judgment has been exercised.

Here, the documentary record reflects repeated remediation efforts over an extended period, longitudinal faculty evaluations across multiple rotations, multiple

Clinical Competency Committee reviews, and two formal appeal processes—one of which resulted in Plaintiff's reinstatement in July 2025, followed by additional remediation and reevaluation before dismissal in November 2025.[1]

While Plaintiff identifies alleged procedural deficiencies, he has not shown—at this preliminary stage—that any such deficiencies plausibly deprived him of academic judgment altogether, as opposed to affecting the form, timing, or sequencing of decisions reached through evaluative processes. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978) (declining to require formal procedural safeguards where academic dismissal followed careful and deliberate evaluation). Nor has Plaintiff demonstrated that strict adherence to the cited procedures would likely have altered the ultimate academic determination itself, as opposed to delaying or reordering the evaluative process. *See Ewing*, 474 U.S. at 225; *Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 74 (4th Cir. 1983).

On this record, Plaintiff has not shown a likelihood of establishing that Defendants' actions amounted to a substantial departure from accepted academic norms within the meaning of *Ewing*.

### 2. § 1981 Discrimination and Retaliation Claims

Plaintiff also alleges retaliation in violation of § 1981 based on complaints of mistreatment and discrimination. The Court acknowledges that, under controlling Fourth Circuit precedent, an employee—or trainee—may engage in protected activity by opposing conduct he reasonably believes to be unlawful, even if that conduct does

---

[1] The July 2025 reinstatement was accompanied by renewed remediation requirements and further evaluation, which ultimately culminated in the November 2025 dismissal.

not ultimately give rise to a viable discrimination claim. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282–84 (4th Cir. 2015).

Nevertheless, Plaintiff must still demonstrate a likelihood of establishing but-for causation—that the adverse action would not have occurred in the absence of the protected activity. *Id.* at 281.

The present record reflects extensive, documented concerns regarding Plaintiff's clinical performance, professionalism, and readiness for independent surgical practice, spanning periods both before and after Plaintiff's complaints. Multiple faculty members and internal committees assessed those concerns and were repeatedly addressed through structured remediation efforts.

At this stage, Plaintiff has not shown that the temporal relationship between his complaints and subsequent adverse actions plausibly overcomes the documented, performance-based rationale reflected throughout the record. Accordingly, Plaintiff has not established a likelihood of success on his § 1981 retaliation claim.

**B.    Irreparable Harm**

The Court does not minimize the seriousness of the harms Plaintiff asserts, including the potential impact of dismissal on his immigration status and professional trajectory. Nevertheless, to warrant preliminary injunctive relief, Plaintiff must demonstrate that irreparable harm is *likely*, not merely possible, and that the requested injunction would meaningfully prevent that harm. *See Winter*, 555 U.S. at 22; *see also Nken v. Holder*, 556 U.S. 418, 434–35 (2009).

The current record does not support such a showing. As reflected in the uncontroverted declaration of Dr. Hannah, Plaintiff's J-1 visa sponsorship rests exclusively with the ECFMG, an independent third party designated by the U.S. Department of State and not before the Court. (*See* Hannah Decl. ¶¶ 10–12.) Individual residency programs lack the authority to sponsor, extend, or reinstate J-1 visa status, and Defendants cannot compel ECFMG to take any particular action. *Id*. The causal chain between the requested injunction and the asserted immigration harm is, therefore, attenuated, and on this record, Plaintiff has not shown that preliminary relief would likely prevent the immigration consequences he identifies. *See Nken*, 556 U.S. at 435 (explaining that although removal may impose serious hardship, such hardship is not irreparable where effective relief remains available and the requested stay would not prevent the asserted injury).

Plaintiff's asserted professional and reputational harms likewise do not establish irreparable injury on this record. While dismissal from a residency program may have significant career consequences, such harms are not ordinarily irreparable where they may be addressed through post-judgment relief if Plaintiff ultimately prevails. And the record reflects that Defendants advised Plaintiff of alternative professional pathways and potential non-surgical residency options in light of his performance evaluations. (*See* Vosburg Decl. ¶¶ 22–23.)

In sum, Plaintiff has not established a likelihood of irreparable harm that is both imminent and redressable through the requested injunctive relief. Plaintiff has thus failed to satisfy the second *Winter* factor.

## C.     Balance of Equities

The balance of equities weighs against the issuance of a preliminary injunction. Plaintiff faces serious personal and professional consequences as a result of his dismissal, including potential effects on his immigration status and medical career. The Court has carefully considered those harms. However, the requested relief would impose substantial and non-speculative burdens on Defendants and on third parties not before the Court.

The record reflects that Plaintiff's continued participation in the residency program required repeated, resource-intensive remediation efforts extending well beyond the ordinary demands of surgical training. These efforts included heightened faculty supervision, individualized mentoring, extended remediation plans, and the allocation of operative cases at levels designed to address Plaintiff's deficiencies.

Faculty declarations and contemporaneous committee records further indicate that this level of intervention required diverting limited educational and operative resources, including surgical case opportunities, from other residents in the program. Those residents—who are not parties to this action—have a legitimate and competing interest in access to operative experience, faculty instruction, and progression through an accredited training pathway.

An injunction compelling Plaintiff's reinstatement would, therefore, do more than maintain the status quo. It would require the Court to mandate the continued reallocation of finite educational and clinical resources in a manner that places disproportionate burdens on Defendants, faculty, and other trainees. Equity does not

9

favor relief that shifts such burdens to non-parties, particularly where the plaintiff has not demonstrated a likelihood of success on the merits, which further weighs against compelling Defendants and non-parties to bear the significant institutional and resource burdens that the requested relief would entail at this preliminary stage.

**D.     Public Interest**

The public interest likewise does not support preliminary injunctive relief on the present record.

There is a strong public interest in fair process, the absence of unlawful discrimination or retaliation, and the integrity of contractual and statutory protections. At the same time, there is an equally strong public interest in permitting accredited medical training programs to exercise good-faith academic judgment and to allocate educational and clinical resources in a manner consistent with patient safety and program integrity.

Judicially compelled reinstatement under these circumstances would risk entangling the Court in the day-to-day allocation of operative experience, faculty supervision, and remediation resources—matters for which courts lack both institutional competence and democratic accountability. The public interest is not served by an intervention that would require second-guessing academic evaluations or mandating the distribution of resources, notwithstanding sustained and documented faculty concerns.

## IV.  CONCLUSION

Plaintiff has not satisfied his burden under *Winter*. While the Court's prior TRO was warranted based on the limited and emergent record then available, the fully developed record presented at the preliminary injunction stage does not justify continuation of extraordinary injunctive relief.

Accordingly, Plaintiff's Motion for Preliminary Injunction (DE 4) is **DENIED**. The Temporary Restraining Order previously entered (DE 7) is **DISSOLVED**.

This Order is not a final adjudication on the merits, and the Court makes no findings beyond those necessary to resolve the pending motion.

IT IS SO ORDERED.

*Joseph Dawson, III*
Joseph Dawson, III
United States District Judge

Florence, South Carolina
February 12, 2026